NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARRETT BAUER, | : |
| Petitioner, | : Civil Action No. 14-4166 (KSH) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

**HAYDEN, District Judge:**

Petitioner Garrett Bauer, confined at FCI Otisville in Otisville, New York, has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, challenging on grounds of ineffective assistance of counsel the judgment and sentence imposed by this Court in *United States v. Bauer*, No. 11-cr-0842, ECF No. 62 (D.N.J. entered June 4, 2012) ("Crim. Dkt."), after he pleaded guilty to securities fraud, conspiracy to commit money laundering, and obstruction of justice. For the reasons stated below, the Court denies the motion.

## I. FACTUAL BACKGROUND

This case involved what the government described as one of the longest-running insider trading schemes ever investigated and prosecuted in the United States. Bauer, a trader, along with Matthew Kluger,[1] an attorney, and Kenneth Robinson, an accountant, conceived and executed their scheme from 1994 through 2011. During his career as an associate at premier national law firms located in New York City and Northern Virginia, Kluger passed on confidential client information

---

[1] Kluger filed a motion to vacate sentence that this Court has decided in a written opinion filed contemporaneously. The Factual Background section tracks that opinion.

regarding mergers and acquisitions to Robinson, who then passed on the information to Bauer, for the express purpose of executing favorable stock trades using the confidential information before the information became public knowledge, allowing the three conspirators to realize massive financial gains. The scheme was successful because Kluger and Bauer had no personal connection or relationship with one another—each knew Robinson personally, but only knew the other as a nameless participant in the conspiracy. With Robinson as the middleman, the three were able to avoid detection because direct evidence that the massive trades Bauer executed were the result of information Kluger supplied never came to light. Eventually, Robinson's own finances caught the attention of the authorities, and he agreed to cooperate with the government. In conversations Robinson secretly recorded, Bauer instructed him about how to destroy evidence of their guilt, and made other incriminating statements that exposed the conspiracy.

Faced with this damaging evidence, Bauer pled guilty to a four-count information charging him with (1) conspiracy to commit securities fraud, (2) securities fraud, (3) conspiracy to commit money laundering, and (4) obstruction of justice for instructing Robinson to destroy evidence. *See* Plea Agreement, Crim. Dkt., ECF No. 47 at 1. The plea agreement did not contain any stipulations as to sentencing. The Court rejected Bauer's arguments for a downward variance, and sentenced him to a within-guidelines sentence of 108 months, which was affirmed on appeal.[2] *See United States v. Bauer*, 529 F. App'x 275 (3d Cir. 2013).

## II.     STANDARD OF REVIEW

A prisoner in federal custody may move the sentencing court "to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the

---

[2] The Court sentenced Kluger to 60 months' imprisonment for count one, and 108 months each for counts two through four, and made all sentences concurrent. *See* Crim. Dkt., ECF No. 62 at 2.

2

Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, because a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

### III. DISCUSSION

Bauer's claims for relief are construed as follows: (1) trial counsel was ineffective in failing to investigate the strength of a venue defense; had Bauer been aware of that defense he would not have pled guilty; (2) trial counsel misled him regarding his sentencing exposure and about how post-plea conduct could reduce his sentence; (3) trial counsel failed to object to certain sentencing enhancements in the presentence report ("PSR"); and (4) trial counsel failed to investigate facts with regard to the obstruction of justice charge. Based on the Court's review of the record, the claims lack merit.

**A. Standard for Ineffective Assistance of Counsel Claims**

The sixth amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Under the familiar standard, this means the right to the effective assistance of counsel, and counsel can deprive a defendant of that right by

3

failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 687-90. The court must determine whether, in light of all the circumstances, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). Second, the defendant must show that he suffered prejudice due to the alleged ineffective assistance. However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083.

The same two-part *Strickland* standard is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014). The defendant must also show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

### B. Lack of Venue

Bauer argues trial counsel failed to discover that the District of New Jersey was not the proper venue to adjudicate the securities fraud offenses, and had counsel discovered this defense

4

and told him about it, he would not have pled guilty.

Contrary to Bauer's belief, venue was proper in the District of New Jersey for the securities fraud offenses. In the original criminal complaint, the government set out the factual basis for venue, alleging that the stock trades initiated by Bauer through NASDAQ and Goldman Sachs were electronically executed by computer servers located in New Jersey. *See* Crim. Dkt., ECF No. 1 at 9-10. In *United States v. Goldberg*, 830 F.2d 459 (3d Cir. 1987), the Third Circuit dealt with a fact pattern analogous to this case. Ronald Goldberg was convicted in the Eastern District of Pennsylvania for wire fraud, specifically for the act of issuing a check withdrawing funds from an account of his corporation when he knew the account did not have sufficient funds to cover the check. He accomplished this by conducting, after issuing the check, a chain of wire transfers in quick succession on multiple accounts, ending with the funds being deposited into an account in the Bahamas. By the time the initial bank realized that the initial account did not have sufficient funds to cover the withdrawal, the funds were already wired offshore.

One of the transactions Goldberg executed was a wire transfer from Chemical Bank in New York City to Wilmington Trust in Wilmington, Delaware. He asserted that venue was improper for the wire fraud charge based on this transaction, arguing there cannot be venue in the Eastern District of Pennsylvania for a bank transfer from New York to Delaware. Relying on 18 U.S.C. § 3237, which states that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed," the Third Circuit held that venue was proper in the Eastern District of Pennsylvania, because "the wire transfer of funds from New York to Wilmington . . . passed through the Federal Reserve Bank in Philadelphia." *Goldberg*, 830 F.2d at 460-65.

Here, Bauer does not dispute the allegations in the criminal complaint that the stock trades were executed by computer servers in New Jersey. As such, the crime began in New York where Bauer initiated his trades, and was completed in New Jersey by the computer servers located there. These facts are even stronger than those in *Goldberg*, because the transactions did not simply "pass through" this district, but were actually completed here. Relying on nonbinding Second Circuit law, Bauer argues that the computer servers only performed "ministerial functions" and therefore cannot be a basis for jurisdiction. (Reply, ECF No. 26 at 6.) But the functions performed by the computer servers here were no more "ministerial" than the functions performed by the Federal Reserve Bank in *Goldberg*. The crime here was the intention to *complete* the trades using insider information. Bauer would not have been able to do so without the computer servers in New Jersey, just as the wire transfer could not have been completed in *Goldberg* without the Federal Reserve Bank in Philadelphia. As such, the Court rejects Bauer's argument and, based on the laws of this circuit, finds that venue was proper for the securities fraud charges, so trial counsel did not render ineffective assistance. Relief on this claim is denied.[3]

---

[3] Although the Court does not construe the petition as raising the same venue argument with regard to the money laundering and obstruction of justice offenses, both respondent and Bauer's counsel confirmed Bauer was informed that the government would not accept any plea offer with less than all four counts included. (Answer, ECF No. 23 at 46; Decl. of Trial Counsel, ECF No. 23-7 at 8.) As such, even if the Court construes the petition as raising a claim that counsel was ineffective in advising Bauer regarding the available venue defense—as it relates to the money laundering and obstruction offenses—he suffered no prejudice because had he received the alleged proper advice, his choice at the time of the plea would be the same: either accept the plea agreement, with all four counts, or reject it outright, as the government was unwilling to offer a plea deal with less than all four counts. Of course, the record is clear which choice Bauer made, which waived all venue challenges. *See United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010) (entry of guilty plea waives any claim of improper venue); (Decl. of Trial Counsel, ECF No. 23-7 at 8 ("I explained to [Bauer] the burden of proof with respect to venue and that it is waivable.")).

### C. Sentencing Enhancements and Exposure

The Court addresses Bauer's second and third grounds together because they are intertwined. Bauer claims that he was falsely induced into pleading guilty by trial counsel's exaggerated prediction regarding a significant sentence reduction, all the while acknowledging that counsel made no explicit promises. This claim belies the record because Bauer represented at the plea hearing that he did not agree to the plea due to any sentencing predictions, and that he further understood that he could not withdraw his plea based on any erroneous sentencing predictions. *See* Crim. Dkt., ECF No. 69 at 12, 19. "[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (quoting *U.S. v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007)); *see United States. v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004) ("Whatever counsel had told Ritter, clearly there was no prejudice because Ritter was fully advised at the time of the taking of the plea that the District Court was not party to an agreement or promise of any kind."); *United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) ("[A]ny possible error in plea counsel's advice to [the defendant] was cured by the plea agreement and at the plea colloquy.").[4]

---

[4] Bauer also argues that he was "coerced" by counsel into pleading guilty, and cites to two cases to support this argument. (*See* Pet'r's Br., ECF No. 5 at 5 n.3.) However, one case involved an attorney's promise to bribe the trial judge to obtain a lesser sentence, which is not alleged here. *Zilich v. Reid*, 36 F.3d 317, 319 (3d Cir. 1994). The other case is a nonbinding opinion from the Tenth Circuit, where the court opined that "[a]n erroneous sentence estimate does not render a plea involuntary, but an attorney's unfair representation of probable leniency may be found coercive." *Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir. 1989). However, the very next sentence states that "[a] petitioner's understanding that he will serve less than his full sentence is neither a promise nor a plea bargain." *Id.* Indeed, despite that petitioner's contention that his attorney promised he would receive a suspended sentence if he agreed to drug treatment, which he ultimately did not receive, the court did not find ineffective assistance or coercion. *Id.* at 1187.

7

Next, Bauer argues that counsel was ineffective when he failed to challenge two two-level sentence enhancements at sentencing, which were the result of Bauer's guilty plea to money laundering and obstruction of justice. (*See* PSR 33.) He asserts that the grouping of the money laundering and obstruction offenses with the securities fraud offenses was erroneous, and had they not been grouped together, he would not have received the four-level enhancement. However, the Sentencing Guidelines specifically mandated the grouping. *See* U.S.S.G. § 3D1.2 (2011) ("All counts involving substantially the same harm shall be grouped together into a single Group."). Bauer argues that the grouping was unsupported by facts, because he only laundered $2 million out of the $30+ million he obtained from insider trading (Pet'r's Br., ECF No. 5 at 9), but the fact remains that *every single dollar* involved in this case originated from the proceeds of the insider trading, so the counts are undisputedly related.

Moreover, the two-level enhancement for money laundering did not require "grouping" to apply. Bauer's real contention, essentially, is that because the amount involved in his money laundering offense was significantly less than the amount for the securities fraud, had the counts not been grouped together, the base offense level for his securities fraud offense would not have increased by two due to his money laundering conviction. There is no basis for this argument, because the two-level enhancement was not applied to the securities fraud offense, but to the money laundering offense itself. Under the Guidelines, the base offense level for the money laundering charge was "the offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense . . . and (B) the offense level for that offense can be determined." U.S.S.G. § 2S1.1(a)(1). There is no dispute both conditions applied to Bauer, so the base level of his money laundering offense was the same as his securities fraud offense, regardless of whether he laundered all or only a portion of the illegal

proceeds. Because Bauer was convicted under 18 U.S.C. § 1956, that offense level increased by two. U.S.S.G. § 2S1.1(b)(2)(B). Indeed, the money laundering offense carried the greatest offense level out of all counts. Bauer's argument rests on an incorrect understanding of Guidelines grouping analysis.

Likewise, Bauer's argument regarding the obstruction enhancement fails. Again, he argues that had the obstruction conviction not been grouped with the other offenses, the base level for the other offenses would not have increased by two. This is also clearly contradicted by the Guidelines, which mandate a two-level enhancement if the defendant willfully obstructed the investigation, prosecution, or sentencing of an offense. U.S.S.G. § 3C1.1. Bauer argues that applying the enhancement, along with the actual obstruction conviction, amounted to double counting, but the Guidelines contemplated, and avoided, such a result. For example, the Guidelines prohibited the two-level enhancement to an obstruction conviction if the obstruction did not occur to impede the obstruction conviction itself. U.S.S.G. § 3C1.1 app. n.6. The Guidelines also contemplated the scenario where a defendant is convicted of both a substantive offense and an obstruction offense, stating that the resulting offense level from the group would be the higher of (1) the level for the substantive offense plus the two-level enhancement, or (2) the level for the obstruction offense itself. U.S.S.G. § 3C1.1 app. n.8. Regardless of grouping, the offense level for the money laundering charge would have increased by two due to § 3C.1.1, which, coupled with the two-level enhancement summarized above, would have resulted in a four-level enhancement to the money laundering charge itself, irrespective of the other charges. Counsel was not ineffective for accepting these enhancements and not objecting to them.

Finally, Bauer argues that he was never fully informed of his sentencing exposure, in particular the two two-level enhancements. The record clearly contradicts this argument. Trial

9

counsel, in his declaration, states he informed Bauer that "the plea offer is 108 months. It is not likely going to get better." (ECF No. 23-7 at 7.) Of course, 108 months was the exact sentence Bauer received. And there was a reason why counsel was able to make such an accurate prediction, because prior to the open plea that Bauer eventually accepted, counsel had been negotiating with the government regarding a stipulated plea, a draft of which was provided to both counsel and Bauer. In the draft, the government made a detailed analysis of sentencing, including the grouping analysis, the two two-level sentencing enhancements, and the total offense level. (*See* ECF No. 23-7 at 43-46.) For Bauer to argue that he was not aware of his full sentencing exposure simply belies the facts—indeed, in his reply, he makes no effort to dispute any of the foregoing, and seems to have abandoned this argument.

In reality, the crux of Bauer's claims appears to be the Court's sentencing decision not to depart from the Guidelines because of his post-conviction activities. That unwelcome outcome did not occur because his lawyer was ineffective. Indeed, at sentencing, the Court opined that the post-plea, pre-sentencing good works and lectures "was kind of all about Mr. Bauer. Not about the harm, the harm, the betrayal of his license." (ECF No. 23-11 at 63.) "By saying that the worst thing in the world is the jail sentence and then having nothing when he comes out, without a wiggle of his finger at what he did. What he really did. That's the problem with the effort that has been mounted by, or the making a serious dent in the sentence." (*Id.* at 64-65.) The Court finds that counsel did not provide ineffective assistance, and relief on these grounds is denied.

### D. Obstruction of Justice Charge

Bauer makes one more claim with regard to the obstruction of justice charge, arguing that counsel provided ineffective assistance because the criminal conduct alleged in the information fell under the definition of obstruction of justice in 18 U.S.C. § 1512(c)(1), which covers deliberate

destruction of evidence, and not the definition in § 1512(c)(2), the catch-all provision, which he was charged with. (Reply, ECF No. 26 at 8.) He argues that counsel should have advised him to reject the plea agreement based on this mistake. Even if the Court accepts Bauer's statutory interpretation, which it does not,[5] counsel was not ineffective.

Bauer essentially admits that he violated § 1512(c)(1). No reasonable attorney would advise his client to reject a plea agreement when the client readily admits guilt, simply because the government allegedly cited to the wrong subsection of a statute. Bauer attempts to overcome this obvious flaw by arguing that counsel should have advised him to force the government to obtain an indictment from a grand jury, which surely would have failed because he was not guilty under § 1512(c)(2). But again, even if Bauer's assumption is correct, there was nothing preventing the government from simply seeking another indictment under the right subsection. Bauer further argues that government's "mistake" could have led to an eventual acquittal. Setting aside how speculative and implausible an outcome that would be, the argument presumes that Bauer would have agreed to reject the plea agreement over a technicality in the first place. The Court finds that counsel was not ineffective for not advising Bauer to reject the plea agreement, and relief on this ground is denied.[6]

### E. Certificate of Appealability

An appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255,

---

[5] After all, Bauer's conduct could fall under *both* definitions.

[6] On September 30, 2014, Bauer filed a supplemental brief, raising one additional argument that counsel was ineffective for failing to investigate whether the undersigned may have had a conflict, as this case involved many companies, enterprises, and stock funds. Beyond the obvious speculative nature of this claim, he does not allege that there was, in fact, a conflict, thus failing to show prejudice. Bauer does not allege that the outcome of the proceedings would have been different had the case been assigned to another judge.

unless a certificate of appealability issues upon a finding that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and the Court declines to issue a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.    CONCLUSION

For the reasons set forth above, Bauer's motion is DENIED and the Court denies a certificate of appealability.

s/ Katharine S. Hayden<br>
**Katharine S. Hayden, U.S.D.J.**

Dated:  August 30, 2018